**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Josue Romero, | No. CV-04-1489-PHX-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| Henke Machine, et al., | |
| Defendants. | |

Before the Court is Defendant Ruiz & Associates, Inc., a/k/a Fernando Ruiz, Inc.'s ("Ruiz") Motion for Summary Judgment (Dkt. 100). Plaintiff Josue Romero ("Romero") filed a Response in opposition (Dkt. 103), to which Ruiz replied (Dkt. 105). The motion being fully briefed, the Court now issues this Memorandum of Decision and Order.

**BACKGROUND**

Romero was hired by Seeds West, Inc. as a Mill Laborer on December 2, 2002. (Dkt. 88, Def.'s Statement of Facts ("DSOF") ¶ 1.) Seeds West is a company that produces, packages and ships Bermuda grass worldwide. (DSOF ¶ 3.) Romero worked in Seed's West's facility located in Roll, Arizona.[1] (DSOF ¶ 2.) As a Mill Laborer,

---

[1] Romero objects to Ruiz's statement of facts insofar as they rely on the Resume of Recorded Interview of Josue Romero ("Romero Interview"). (Dkt. 108, Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 2-5, 7-12.) Romero does not elaborate as to why the Romero Interview

Romero's assigned duties included cleaning out excess seed from a machine called a vertical auger mixer, commonly referred to as a blender. (Id.)  Seeds West did not provide Plaintiff with any formal training on cleaning the blender. (DSOF ¶ 5.)  Plaintiff did receive training from a co-worker, Ivan Torres. (Id.)  The parties and evidence dispute whether Plaintiff was ever instructed not to place his hand inside the blender to remove excess seed. (Compare DSOF Ex. 2 ("He states that he was never instructed 'not to' stick his and inside the area to remove any excess sand.") with DSOF Ex. 4 at 3 ("Mr. Torres stated that when Mr. Romero was trained he was told to never reach into the machine.  The victim knew this and stated so during his interview.").)

On March 27, 2003, Plaintiff was operating the blender with Mr. Torres. (DSOF ¶ 8.)  Plaintiff and Mr. Torres were in the process of cleaning the leftover seed out of the blender to prepare for running a new batch of seed. (DSOF ¶ 9.)  Mr. Torres was on a forklift platform using an air lance to clean out the top of the blender and Plaintiff was at the floor level cleaning out the bottom of the machine. (DSOF ¶ 10.)  Plaintiff had the blender's access door open and, after most of the seed had flowed out by gravity, he reached in with his right and to clean out the remaining seed. (DSOF ¶ 11.)  Mr. Torres did not realize that Plaintiff was still working on the bottom of the machine and he turned the power back on, causing Plaintiff's hand to be severed. (DSOF ¶ 12.)  This litigation arises out of Plaintiff's injury.

A few years prior to the accident, Seeds West hired Ruiz to provide drug testing services and generalized safety training. (DSOF ¶ 20.)  Ruiz is a company that provides general assessment level safety training for employees of various companies, including Seeds West. (DSOF ¶ 21.)  Assessment level training provides employees with a basic

---

is not an admissible portion of the record.  Furthermore, Romero submits and relies upon the same interview in his Statement of Facts. (Dkt. 104, Pl.'s Statement of Facts ("PSOF") Ex. 2.)  Finally, Romero does not refer to the specific admissible portion of the record supporting his position that the fact is disputed.  LRCiv 56.1(b).  Therefore the Court will accept the Romero Interview as admissible evidence to be considered in deciding Ruiz's Motion for Summary Judgment.

1  overview of general safety issues such as preventing back injuries, emergency
2  preparedness, and the basics of working with electrical equipment.  (DSOF ¶ 22.)  Ruiz
3  also provides companies with alcohol and drug testing for their employees.  (DSOF ¶ 23.)
4       Ruiz entered into a contract with Seeds West to provide generalized overviews of
5  safety topics at its Yuma and Roll, Arizona facilities.  (DSOF ¶ 26.)  The contract
6  required Ruiz to provide monthly safety assessment meetings to Seeds West employees
7  based on a list of possible safety assessment topics provided by Ruiz.  These topics
8  mirrored the list of videos Ruiz could obtain from an outside vendor, and the safety
9  meetings generally included showing short videos.  (DSOF ¶ 27.)  A few days before
10 each monthly meeting, Ruiz would send a fax to Mr. Robert Vaughn, stating the time and
11 location of the meeting and identifying the safety topic to be addressed.  (DSOF ¶ 28.)
12      Seeds West employees were notified of the meetings by a notice posted by Mr.
13 Vaughn next to the time clock a couple of days before each meeting.  Seeds West
14 required all employees to attend the meetings.  The day of each meeting, Mr. Vaughn
15 called all employees into the building and shut down the facility when the meetings
16 occurred.  (DSOF ¶ 29.)  At the monthly meetings, a representative from Ruiz would
17 show a video on a safety topic and answer any questions employees had on the chosen
18 topic.  The meetings generally lasted about fifteen minutes each.  (DSOF ¶ 30.)
19      During the monthly safety meetings, no employee ever asked Ruiz to provide
20 specific training on any specific machine.  (DSOF ¶ 31.)  No one from Seeds West ever
21 asked Ruiz, at a safety meeting or any other time, to perform training on specific
22 machines or training specifically regarding machine guarding for the blender.  (DSOF ¶
23 32.)  Ruiz's contract with Seeds West did not require Ruiz to inspect any Seeds West
24 machines, and Seeds West never asked Ruiz to survey any of its machines to ensure that
25 there were no safety deficiencies.  (DSOF ¶ 33.)  Ruiz never specifically worked with
26 Seeds West employees on a hands-on basis with regard to any specific machines or
27 specific working procedures related to their work performed at Seeds West.  (DSOF ¶
28 34.)  Seeds West never considered Ruiz to be responsible for its overall safety training

1  program at Seeds West.  Ruiz was hired to complement the safety program already in
2  existence at Seeds West.  (DSOF ¶ 35.)  Ruiz was never expected or asked to inspect the
3  blender or otherwise provide training specific to the safe use of the blender and the
4  machine guarding that should have been in place to protect employees from accidents.
5  (DSOF ¶ 36.)

6  Plaintiff's alleges that Ruiz's negligence caused his injury. (DSOF ¶ 37; Dkt. 53,
7  Second Am. Compl. ¶¶ 16-21.)  Plaintiff contends that Ruiz failed to provide specific
8  safety training on machines used by employees of Seeds West, including the blender that
9  caused Plaintiff's injury.  (DSOF ¶ 38.)  The parties agree that Ruiz did not provide
10 specific safety training on the blender to Plaintiff or any other Seeds West employee.
11 (DSOF, Ex. 11.)  Plaintiff admits that the only training he received specific to the blender
12 was performed by Seeds West, and not by Ruiz.  Plaintiff retained an engineer, Quent
13 Augspurger, to investigate the blender that caused Plaintiff's injury and assist in the
14 preparation of his case.  (See DSOF, Ex. 12.)  The parties dispute the adequacy and
15 accuracy of the reports Mr. Augspurger produced in connection with this case.

## STANDARD OF REVIEW

17 A court must grant summary judgment if the pleadings and supporting documents,
18 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
19 issue as to any material fact and that the moving party is entitled to judgment as a matter
20 of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
21 Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive
22 law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242,
23 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might
24 affect the outcome of the suit under the governing law will properly preclude the entry of
25 summary judgment."  Anderson, 477 U.S. at 248.  The dispute must also be genuine, that
26 is, the evidence must be "such that a reasonable jury could return a verdict for the
27 nonmoving party."  Id.; see Jesinger, 24 F.3d at 1130.

28

- 4 -

1    A principal purpose of summary judgment is "to isolate and dispose of factually
2    unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
3    against a party who "fails to make a showing sufficient to establish the existence of an
4    element essential to that party's case, and on which that party will bear the burden of
5    proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th
6    Cir. 1994).  The moving party need not disprove matters on which the opponent has the
7    burden of proof at trial.  See Celotex, 477 U.S. at 323-24.  The nonmovant "may not rest
8    upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth
9    specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see
10   Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986);
11   Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  A trial court
12   can only consider admissible evidence in ruling on a motion for summary judgment.  Fed.
13   R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

## DISCUSSION

15   Ruiz seeks summary judgment on Plaintiff's negligence claim, the only claim
16   asserted against Ruiz. (See Dkt. 53, Second Am. Compl. ¶¶ 16-21.)  Actionable
17   negligence arises only when there is a duty on the part of the defendant to protect the
18   plaintiff from the injury of which he complains, defendant fails to perform this duty, and
19   the plaintiff is injured as a proximate result of such failure. Bennett v. Estate of Baker,
20   557 P.2d 195, 197 (Ariz. Ct. App. 1976).  In the absence of any one of these elements,
21   there is no actionable negligence. Id.  Thus, a negligence action cannot be maintained
22   unless there is a duty or obligation, recognized by law, which requires the defendant to
23   conform to a particular standard of conduct in order to protect others against an
24   unreasonable risk of harm. Markowitz v. Arizona Parks Bd., 706 P.2d 364, 366 (Ariz.
25   1985).  "The first element, whether a duty exists, is for the court to decide." Gipson v.
26   Kasey, 150 P.3d 228, 230 (Ariz. 2007).

27   The Court must first determine whether Ruiz was under any duty of care with
28   respect to training Plaintiff on the proper use of the blender or examining the blender for

- 5 -

1  safety concerns.  See Markowitz, 706 P.2d at 367.  Ruiz asserts that it owed no duty to
2  inspect machines, train employees about specific machines, or ensure there was proper
3  machine guarding on the blender.  (Dkt. 100, Def.'s Mot. for Summ. J. 7-8.)  Ruiz further
4  asserts that the duty to ensure a safe work place was a duty owed solely by Seeds West
5  and could not be delegated to Ruiz.  (Id. at 8:27-9:13.)  Plaintiff responds that Ruiz's duty
6  to Plaintiff was created by contract, and included the inspection of the machines Seeds
7  West employees worked on.  (Dkt. 103, Pl.'s Resp. 8:12-22.)  Plaintiff further responds
8  that the duty was not Seeds West's.  (Id. at 9:21-10:11.)

9  Plaintiff asserts that Ruiz owed a duty to protect Plaintiff from his injury because:
10  (1) Ruiz was hired as a safety consultant (PSOF ¶ 35); (2) Mr. Vaughn, Seeds West's
11  Safety Director, testified that he would not have objected if Ruiz inspected the machines
12  (PSOF ¶¶ 32, 33, 36); (3) Ruiz "felt obligated to take a look at the facility to see if there
13  were any safety deficiencies" (PSOF ¶ 32); and (4) Plaintiff's expert opined that Ruiz fell
14  below the applicable standard of care as the safety consultant (PSOF ¶¶ 42-47).  In sum,
15  Plaintiff expands Ruiz's contractual responsibilities to Seeds West into an overall
16  obligation to ensure the safety of all Seeds West employees, based on Ruiz's training and
17  knowledge of workplace safety.

18  The evidence presented reveals no genuine issue of material fact to support
19  Plaintiff's contention that Ruiz owed Plaintiff a duty to protect against the injury of which
20  he complains.  It is undisputed that Ruiz's contract with Seeds West did not require Ruiz
21  to inspect any Seeds West machines.  (DSOF ¶ 33; Dkt. 108, Pl.'s Resp. to Def.'s
22  Statement of Facts ("PSOF") ¶ 33.)  It is also undisputed that Ruiz was never expected or
23  asked to inspect the blender or provide training specific to the safe use of the blender and
24  the machine guarding.  (DSOF ¶ 36; PSOF ¶ 36.)  That Mr. Vaughn would not have
25  *objected* if Ruiz voluntarily went beyond the scope of its contractual duties does not
26  create a legal duty.  Mr. Ruiz stated that he would feel obligated to examine the
27  machinery, but expressly distinguished this personal sentiment from the obligations owed
28  under the contract.  (DSOF, Ex. 9, Dep. of Fernando Ruiz dated Dec. 19, 2005 76:16-77:8

("That's not what I was hired for. . . . What I feel obligated to and what the client hires me to perform is (*sic*) two separate issues.").)

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Plaintiff provides no evidence to dispute the fact that Ruiz was not responsible for inspecting the Seeds West machines or providing training on the safe use of specific machines. Plaintiff's expert opined that Ruiz fell below the standard of care, but his opinion is also based on the fundamental misconception that Ruiz was responsible for inspecting the machines at Seeds West. (See DSOF, Ex. 12, Report by Quent Augspurger dated Jan. 27, 2004 at 6, 7.)

No genuine issue of material fact to support Plaintiff's contention that Ruiz owed Plaintiff a duty to protect against the injury of which he complains. Plaintiff fails to establish that contract or practice created a duty on the part of Ruiz. The Court having determined that Ruiz owed no duty to Plaintiff, Ruiz's motion for summary judgment shall be granted. Gipson, 150 P.3d at 230; Markowitz, 706 P.2d at 366.

## CONCLUSION

Ruiz owed no duty to protect Plaintiff from the injury of which he claims. Summary judgment is therefore warranted on Plaintiff's negligence claim against Ruiz. As this disposes of the only remaining claim and defendant in this matter (see Dkt. 83), this matter will be terminated. Accordingly,

**IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment (Dkt. 100).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this matter and enter judgment accordingly.

DATED this 15th day of May, 2008.

Stephen M. McNamee
United States District Judge